## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

| | |
|---|---|
| RENE MITCHELL<br>9003 Harness Way,<br>Bowie, MD 20717<br>Prince George's County,<br><br>Plaintiff,<br><br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION<br>800 Nicollet Mall<br>BC-MN-H210<br>Minneapolis, MN 55402,<br><br>OCWEN LOAN SERVICING, LLC<br>2711 Centerville Rd<br>Ste 400<br>Wilmington, DE 19808,<br><br>and<br><br>BROCK & SCOTT, PLLC<br>1315 Westbrook Plaza Dr.<br>Ste 100<br>Winston-Salem, NC 2710<br><br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rene Mitchell ("Plaintiff" or "Ms. Mitchell") hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is an action stemming from the egregious conduct by Defendants

U.S. Bank National Association ("U.S. Bank"), Ocwen Loan Servicing, LLC ("Ocwen"),

and Brock & Scott, PLLC, in an effort to wrongfully foreclose on Plaintiff Rene

Mitchell's home.

2.      Ms. Mitchell purchased her home in 2005.  She agreed to a 30-year fixed-rate mortgage, and signed a contract to that effect with her lender Fremont Investment and Loan ("Fremont").  Fremont, a major lender in the sub-prime housing market in the mid-2000s, became the target of government regulators for predatory lending practices shortly thereafter.  In 2007, the Federal Deposit Insurance Cop. ("FDIC") found that Fremont was making loans "in a way that substantially increased the likelihood of borrower default or other loss to the bank," and ordered Fremont to tighten its loan policies and operations to avoid future losses from defaults by borrowers.  Soon after, Fremont declared bankruptcy, closed its business, and dissolved its assets.

3.      Ms. Mitchell was one the Fremont borrowers who became enmeshed in Fremont's predatory lending practices, and in a particularly egregious way.  At her mortgage closing, Fremont switched her note from the agreed upon fixed-rate mortgage to an adjustable rate mortgage (the "ARM").  Prior to completing the closing, Ms. Mitchell caught Fremont's bait-and-switch tactic, and demanded that Fremont's agent return the signed documents.  Fremont refused, but agreed to "VOID" the closing documents, including by stamping the note and deed as "VOID," and subsequently memorializing the cancelation in a letter to Ms. Mitchell.

4.      Nevertheless, the servicing agents assigned to Ms. Mitchell's mortgage, including particularly Ocwen, harassed and pursued her for years for undue payments on the VOID note, eventually resulting in her mortgage delinquency.  Ocwen's predatory misconduct thus led to Defendants' foreclosure proceeding against Ms. Mitchell's home,

in 2016, due to, in the words of the Maryland Special Court of Appeals, an "unscrupulous mortgage transaction," involving a bait-and-switch note, harassment of Ms. Mitchell based on a VOID note, a "forgery" on the VOID note to remove the term "VOID," and the pursuit of a foreclosure on Ms. Mitchell's home using that "forged" note. *See Mitchell v. Yacko*, 2017 Md. App. LEXIS 563 (Special Ct. App. May 31, 2017).

5.     Even worse than Fremont's actions, the Defendants in this case, (i) U.S. Bank, the entity that directed Ms. Mitchell's foreclosure proceeding, as the claimed assignee to Fremont's loan, (ii) Ocwen, the servicing entity that used the VOID note to harass and pursue Ms. Mitchell until she became delinquent, and (iii) Brock & Scott, the substitute trustees who brought the foreclosure action against Ms. Mitchell based on the forged note, all knew or should have known that they were proceeding with a fraudulent foreclosure using an invalid or forged note.

6.     Indeed, the Court of Appeals admonished Defendants when it stated that the documents were "clearly false and materially altered to look genuine—suggest[ing] forgery. . . ."

7.     Ms. Mitchell took numerous steps to resolve her mortgage issues with Fremont and the loan servicers by challenging their predatory tactics and making information requests.

For instance, as far back as October 2011, Ms. Mitchell alerted Ocwen that it had opened an unauthorized tax escrow account, and improperly applied her payments to that escrow.

8.     In addition, over a period of four years, Ms. Mitchell submitted numerous Qualified Written Requests ("QWR") and requests for responses to QWRs, including the

following:

    a.   July 2012 QWR to Ocwen

    b.   November 2013 QWR to Ocwen

    c.   November 2014 QWR to Ocwen, U.S. Bank, Brock & Scott and others

    d.   March 2015 letter to Ocwen, U.S. Bank, Brock & Scott and others

    e.   March 2016 QWR to Ocwen, U.S. Bank, Brock & Scott and others

    9.    Ocwen failed to respond to Ms. Mitchell's first QWR, and, even when Defendants did respond to Ms. Mitchell's QWRs and/or letters, their responses were cursory and wholly inadequate.

    10.    Ms. Mitchell was thus faced with a lifetime of demands for excessive payment by Ocwen on a loan that was void, as well as the repeated failure of Ocwen to properly record or credit her payments or obligations under the terms of a valid note. That misconduct was apparently customary, bad act practices by Ocwen, as in recent months the Consumer Financial Protection Bureau ("CFPB") and Florida Attorney General's Office have brought suits against Ocwen claiming that it botched regular functions such as sending accurate monthly mortgage statements and properly crediting borrowers' payments. Even worse, the CFPB claims that Ocwen has been improperly foreclosing on struggling borrowers, ignoring complaints and selling servicing rights to mortgage loans without fully disclosing mistakes the company and its subsidiaries made in borrowers' records. Moreover, mortgage regulators representing more than twenty states recently filed suit in Michigan, seeking a cease-and-desist order against Ocwen serving or originating mortgages because it had failed borrowers with mistakes, shortcuts

and other problems that cost people their homes.

11.    On October 9, 2014, confirming Mr. Mitchell's worst fears, Brock & Scott, acting as substitute trustee for U.S Bank, an entity that claimed to be the recipient of an assignment of Ms. Mitchell's VOID loan, sent Ms. Mitchell a notice of intent to foreclose on her home based on the VOID note.

12.    On August 24, 2015, Brock & Scott filed a foreclosure action against Ms. Mitchell based on the VOID, "forged" note.  Ms. Mitchell filed a motion to dismiss, arguing that the substitute trustees had no right to foreclose on her home because the promissory note and deed of trust were "VOID," but the Circuit Court denied her motion.

13.    On appeal, the Special Court of Appeals vacated the Circuit Court's denial and remanded for a hearing on whether the action should be dismissed.  The Court of Appeals made critical findings that Defendants engaged in highly unscrupulous, fraudulent activity:

   a.    the deed of trust that was filed in Prince George's County had the "VOID" marks excised from it.

   b.    The documents were "clearly false and materially altered to look genuine" and constituted a "forgery."

   c.    Foreclosure proceedings cannot, as a matter of law, be instituted upon forged documents.

14.    By forging documents, using forged documents to foreclose on Ms. Mitchell's loan, and through all of the actions over the years harassing Ms. Mitchell about her loan based on a VOID note, Defendants U.S. Bank, Ocwen, and Brock & Scott committed, among other things, fraud, myriad violations of the Fair Debt Collections Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Practices Act

("MCDCPA"), the Maryland Consumer Protection Act ("MCPA"), and the Fair Credit Reporting Act ("FCRA").

**PARTIES**

15.     Plaintiff Rene Mitchell is a citizen of the State of Maryland, owning the subject property at 9003 Harness Way, Bowie, Maryland.

16.     Defendant U.S. Bank, National Association ("U.S. Bank") having a principal address at 800 Nicollet Mall, BC-MN-H210, MINNEAPOLIS, MN 55402, claims that it is the Assignee of the mortgage on the property owned by the plaintiff, is, and at all times herein mentioned was, a business entity of unknown form, and at all times herein mentioned was doing business in Prince George's County, Maryland.

17.     Defendant Ocwen Loan Servicing, LLC., ("Ocwen") having a principal address at 2711 Centerville Rd, Ste 400, Wilmington DE 19808, loan servicer of the mortgage on the property owned by the plaintiff, is, and at all times herein mentioned was doing business in Prince George's County Maryland.

18.     Defendant Brock & Scott, PLLC., having a  principal address at 1315 Westbrook Plaza Dr. Suite 100, Winston-Salem NC 2710, is substitute trustee for Friedman & MacFayden and attorneys for U.S. Bank prosecuting the wrongful foreclosure on the property owned by Plaintiff.

19.     Defendant Brock & Scott acted to foreclose on Ms. Mitchell's home, at U.S. Bank's direction, through its agents, including Keith Yacko, Robert Frazier, Gene Jung, Jason Hamlin, Thomas Gartner, and Glen Tschirgi.

20.     Plaintiff on information and belief avers that Defendants U.S. Bank,

Ocwen, and Brock & Scott, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

21.     Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## JURISDICTION AND VENUE

22.     This Court has federal question jurisdiction under 28 U.S.C. § 1331.

23.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

24.     Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendants transact business in this district and a substantial part of the events giving rise to the claims asserted arose in this district.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

**A.  Fremont's Bait and Switch Lending Tactic Led to a VOID Note**

25.     Rene Mitchell is a resident of Maryland and is the current owner and occupant of the property located at 9003 Harness Way, Bowie, MD 20715.

26.     On June 8, 2005 Ms. Mitchell signed a conventional fixed rate 30-year mortgage loan sales contract to purchase the property at 9003 Harness Way, Bowie, MD 20715, from the previous owners Harold J. Moxley and Maria Moxley and made known to all, including the Realtor Paula Haines, prior to the closing held at (now defunct)

Sandler Title & Escrow, LLC  and the lender Fremont Investment and Loan ("Fremont"), that it was her intention to consummate the purchase of the property using a conventional fixed rate 30-year mortgage loan.

27.    On July 11, 2005, Ms. Mitchell attended the closing with Ms. Haines, the previous owners of the property, and settlement agents Barbara Licon and Philip Sardelis. At the closing, after signing some of the documents, Ms. Mitchell became aware that the Promissory Note for the purchase of the property was an ARM, expressly contrary to her instructions to Fremont and Ms. Haines.  The note stated that the interest rate would adjust in accordance with Section 4 of the note.  Prior to the closing the lender Fremont made a commitment to Ms. Mitchell that the loan for purchase of the property would be a conventional fixed rate 30-year mortgage loan.

28.    Ms. Mitchell informed Realtor Haines and all others that were present at the closing, including settlement agents Barbara Licon and Philip Sardelis, of the error. Ms. Mitchell then refused to continue signing any further documents and requested that the closing be terminated.  Ms. Mitchell requested that all documents that were signed including the adjustable rate Promissory Note and Deed of Trust be returned immediately and not be used in any way until new correct documents were provided for signature.

29.    The settlement agents agreed to the termination but they explained that their understanding of the law was that they must retain any signed documents and later shred them. The realtor, Ms. Haines, agreed with the settlement agents' understanding. Ms. Mitchell then requested that a "VOID" mark be placed on each document that was

signed, including the Adjustable Rate Promissory Note, Deed of Trust and HUD-1, and that copies of the documents marked "VOID" be provided to Ms. Mitchell.

30.     The settlement agent then stamped "VOID" on each document, including the Adjustable Rate Promissory Note, Deed of Trust and HUD-1, and placed her initials next to each "VOID" stamp on the cover pages of the Adjustable Rate Promissory Note, Deed of Trust and HUD-1 documents. Ms. Mitchell also placed her initials next to each "VOID" stamp. Thereafter copies of the documents having the "VOID" stamps and initials were provided to Ms. Mitchell.

31.     On July 11, 2005, Ms. Mitchell informed Fremont of the error and forwarded to it copies of the Adjustable Rate Promissory Note, Deed of Trust and HUD-1 documents each having the "VOID" stamp and initials as well as the underwriting documents from First Community Mortgage and Sales contract from Century 21/Remax. Upon review, Fremont acknowledged that the Promissory Note and Deed of Trust for the purchase of the property should not have been based on an adjustable rate loan but instead should have been a Conventional Fixed Rate 30-year Mortgage Loan.

32.     On July 12, 2005 Fremont and Ms. Mitchell agreed to cancel the Adjustable Rate Promissory Note and Deed of Trust.  Fremont agreed to issue a new conventional fixed Rate 30-year note and Deed of Trust.  On July 12, 2005 Fremont issued a letter indicating the cancelation of the Adjustable Rate Promissory Note. On July 15, 2005, Fremont then affixed a signed "Cancellation and Satisfaction In Full" stamp on each of the documents, including the Adjustable Rate Promissory Note and Deed of

Trust, having the "VOID" stamp and initials, and returned copies of the canceled documents to Ms. Mitchell.

33.     Despite repeated requests for execution documents, at no time have any of the Defendants presented to Ms. Mitchell the opportunity to execute any new documents constituting the new Conventional Fixed Rate 30-year Note and Deed of Trust as agreed. Ms Mitchell has stood ready to execute such documents but none have been issued.

B.  **Defendants Used the VOID Note to Harass Ms. Mitchell and Improperly Demand Payments and Penalties Under the Terms of the VOID Note**

34.     After the closing and cancellation of the Adjustable Rate Promissory Note numerous irregularities and errors were committed by the lender Fremont and the loan servicers Ocwen and HomeQ, including inaccurate calculation of loan balances, improper crediting of loan payments.

35.     HomeQ serviced Ms. Mitchell's loan for Fremont.  It wrongfully accounted for Ms. Mitchell's loan using the VOID note, and further charged Ms. Mitchell penalties for failure to keep up with payments under that note, and applied Ms. Mitchell's subsequent payments to those penalties instead of the principal and interest due.  This cycle sent Ms. Mitchell on a path that could only lead to financial disaster.

36.     In September 2010, HomeQ transferred the loan servicing rights to Ocwen Loan Servicing.

37.     In a series of correspondence with Ocwen, including QWRs, Ms. Mitchell challenged Ocwen's reliance on the VOID note and HomeQ's faulty accounting under that note.   Specifically, in October 2011, Ms. Mitchell challenged Ocwen's practice of establishing an unauthorized escrow account.  Subsequently, Ms. Mitchell sent Ocwen a

First QWR in July 2012 and a Second QWR in November 2013.  Ms. Mitchell also alerted the Consumer Financial Protection Bureau ("CFPB") to Ocwen's practices.

38.     Ocwen ignored and/or dismissed Ms. Mitchell's correspondence without adequate response.

39.     In December 2013, Plaintiff received a letter from CFPB which provided a link to the response that Ocwen provided to CFPB.  Ocwen stated it was gathering documents and would send them within 30 days.  Ocwen never sent the documents.  Rather, it continued to impose harsh payment demands on Ms. Mitchell.

40.     Throughout its servicing of the loan, Ocwen transmitted numerous harassing notices to Ms. Mitchell, stating she was in default and threatening her with foreclosure of her home, even though Ocwen, as an agent of U.S. Bank, knew that it had no right to institute foreclosure proceedings on her home because the operating promissory note and deed of trust were voided years ago.

C. **Defendants Proceeded to Foreclose on Ms. Mitchell's Home, Including by Using a Forged Note that Obscured that the Note was VOID**

41.     On October 9, 2014, Brock & Scott, the substitute trustee for U.S. Bank, sent Ms. Mitchell a notice of an intent to foreclose on the property.

42.     In November 17, 2014 Plaintiff sent a 3rd QWR to Ocwen, U.S. Bank and its attorneys, complaining about accounting and servicing issues, and raising further concerns about Fremont's predatory lending practices.  Defendants failed to adequately respond to the 3rd QWR.

43.     On March 12, 2015, Brock & Scott sent Ms. Mitchell a notice letter stating that it had received a foreclosure referral from Ocwen, servicing agent for U.S. Bank, as

Trustee.  In the letter, signed by Thomas Gartner, Brock & Scott told Ms. Mitchell that her property would be foreclosed upon if she did not pay over $475,000 (exclusive of foreclosure fees and costs, the letter noted) immediately.  Notably, this $475,000+ figure was premised on an adjustable rate mortgage which was *not* agreed to by Ms. Mitchell, and not the fixed rate mortgage Ms. Mitchell *had* agreed to.

44.     On March 22, 2015, Plaintiff responded to Brock & Scott, making clear that the referenced loan had been cancelled in 2005.  Specifically, she stated that she cancelled her loan with Fremont within the 30-day cancellation period and that Fremont could not have legally sold her loan because it was null and void.  Ms. Mitchell also disputed the payoff amount, stating that the amount was based on a "VOID" adjustable rate mortgage she *never* agreed to, and that the deed of trust was "VOID" by operation of law as of July 12, 2005.

45.     On August 25, 2015 Defendants sought to foreclose on Ms. Mitchell's home the by filing an Order to Docket based on the adjustable rate promissory note and deed of trust that, as Defendants were aware, Fremont and Ms. Mitchell had expressly cancelled.

46.     Defendants acted through Brock & Scott, the substitute trustee law firm, and its attorneys Keith Yacko, Robert Frazier, Gene Jung, Jason Hamlin, Thomas Gartner, and Glen Tschirgi pursuant to an agreement between the Trustee U.S. Bank and Brock & Scott to substitute in as trustee to the voided and legally invalid deed of trust.  Brock & Scott initiated the foreclosure action against Mr. Mitchell.

47.     In the foreclosure action, attached to the order to docket is what is alleged to be a "Redacted" copy of the adjustable rate promissory note and deed of trust. The "Redacted" copy of the Adjustable Rate Promissory Note and Deed of Trust is exactly the same as the Adjustable Rate Promissory Note and Deed of Trust canceled by the lender Fremont and Ms. Mitchell with the exception of the missing signed "Cancellation and Satisfaction In Full" stamp placed by the lender Fremont on said note and the "VOID" stamp and initials placed by the settlement agent Barbara Licon and Ms. Mitchell on said note.

48.     The "Redacted" copy is a forgery—as stated by the Maryland Special Court of Appeals.  The documents are "clearly false and materially altered to look genuine," in the words of the court.

49.     The deed of trust was filed in the land records for Prince George's County on July 14, 2005—just three days after the terminated closing.  As found by the Special Court of Appeals, "[t]hese documents were apparently doctored, because they *do not* bear the 'VOID' MARKS.  Instead, the copy of the deed of trust filed with the order to docket bears the marking 'REDACTED' on each page and contains an adjustable rate rider.  Similarly, each page of the adjustable rate note bears the marking 'REDACTED.'  The note does not contain the 'VOID' marks, Ms. Mitchell's handwritten note, or the lender's cancellation mark."

50.     Ms. Mitchell filed a motion to dismiss the foreclosure action.  She argued that she was not properly served with the foreclosure complaint and that, on the merits,

the trustees failed to state a claim because, among other things, the promissory note and deed of trust were null and void.

51.     On February 11, 2016, the Circuit Court denied Ms. Mitchell's motion without a hearing.

52.     On March 7, 2016, Ms. Mitchell filed a notice of appeal in the Special Court of Appeals.

53.     On May 31, 2017, the Special Court of Appeals vacated the Circuit Court's ruling and remanded for a hearing on Ms. Mitchell's motion to dismiss.  The Court held that "a party cannot institute a foreclosure upon forged documents."  The Court found that there is no "evidence that a valid deed or note exists."

54.     As a result of Defendants' egregious, fraudulent behavior in connection with her mortgage and her home, Plaintiff has been irretrievably damaged and now seeks recompense.

**COUNT I**
**NEGLIGENCE**

55.     Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

56.     At all times relevant herein, the Defendants, acting as Plaintiff's lenders, the lender's loan servicer, and the trustees of the deed had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill their duties and responsibilities attendant to the maintenance, accounting, and servicing of loan records, including accurate crediting of payments made by Plaintiff.

14

57.     In taking the actions alleged above, and in failing to take the actions as alleged above, the Defendants breached their duty of care and skill to Plaintiff in the servicing of Plaintiff's loan by, among other things:

- egregiously forging and falsifying legal documents and/or using such forged and false documents;

- failing to properly and accurately credit payments made by Plaintiff toward the loan;

- harassing and demanding payment for years based on false and inflated accountings;

- attempting to foreclose on Plaintiff's home based on forged documents without any legal basis to do so.

58.     As a direct and proximate result of the negligence and carelessness of the Foreclosing Defendants as set forth above, Plaintiff suffered general and special damages in an amount to be determined at trial.

## COUNT II
### FRAUD

59.     Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

60.     At all times relevant herein, the Defendants, acting as Plaintiff's lenders, the lender's loan servicer, and the trustees of the deed had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill their duties and responsibilities attendant to the maintenance, accounting and servicing of loan records, including accurate crediting of payments made by Plaintiff.

61.     In taking the actions alleged above, and in failing to take the actions as alleged above, the Defendants engaged in fraudulent activity, by among other things:

- egregiously forging and falsifying legal documents and/or using such forged and false documents;

- failing to properly and accurately credit payments made by Plaintiff toward the loan;

- harassing and demanding payment for years based on false and inflated accountings;

- attempting to foreclose on Plaintiff's home based on forged documents without any legal basis to do so.

62.     Defendants engaged in a pattern and practice of defrauding Plaintiff in that, during the life of the mortgage loan, Defendants failed to properly track and/or credit payments made and foreclosed on the subject property based on Plaintiff's alleged non-payment, which they knew to be false.

63.     Defendants had actual knowledge that the Plaintiff's account was inaccurate.   Defendants knew, however, that they could use the inaccuracy to foreclose on the Plaintiff's home to recover its excessive fees, charges and interest.  Plaintiff made such payments and provided proof of the payments based on the improper, inaccurate, and fraudulent representations as to their account.  Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

64.     Defendants concealed material facts known to them but not to Plaintiff regarding accurate loan amount due, payments, notices, assignments, transfers, late fees and charges with the intent to defraud Plaintiff.

65.     Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiff's reliance, which the unsuspecting Plaintiff justifiably relied upon, resulting in damage to her credit standing, costs, and possible loss of their property. Plaintiff was unaware of the true facts.  Had Plaintiff known the true facts, Plaintiff, among other things, would not have maintained the Defendants as their lender, servicer and trustee (and their alleged agents) and/or would have taken legal action immediately to save her house.

66.     As a result of the Defendants' fraudulent conduct, Plaintiff has suffered compensatory, general and special damages.  Additionally, the Defendants acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of punitive damages.

<u>**COUNT III**</u>
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**41 U.S.C. §§ 1692 *et seq.***

67.     Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

68.     Defendants regularly sent harassing notices to Plaintiff, threatening to foreclose on her home and ultimately filing an action in the Circuit Court of Maryland to foreclose on her home.

69.     Defendants made false, deceptive, and misleading representations to the Plaintiff.  It was false, deceptive, and misleading to falsely describe both 1) the amount of debt Plaintiff had in connection with mortgage and 2) the character of the debt because Defendants had absolutely no legal basis whatsoever to take any action with respect to collecting mortgage payments on the property and foreclosing on the property.

70.     Defendants had no legal basis to take these actions because there is no legally valid, cognizable deed of trust or promissory note in connection with Plaintiff's home.  The promissory note and deed of trust are void.  Defendants made *no effort* to have Plaintiff execute a mortgage and deed of trust that reflected the fixed rate she initially agreed to and ownership of her home.

71.     By not having Plaintiff execute valid documents in connection with her mortgage, Defendants for years continuously misrepresented, mischaracterized, and falsely described the nature of Plaintiff's debt in egregious violation of the FDCPA.

72.     Defendants continued their violations by attempting to foreclose on Plaintiff's home in 2016, and using documents described by the Special Court of Appeals as forgeries in that attempt.

73.     Specifically, the Defendants by and through their principals or agents forged the promissory note and deed of trust by excising the word "VOID" from those documents and/or used those forged documents to foreclose on Ms. Mitchell's home.

74.     The Special Court of Appeals found the deed of trust and promissory note filed with Prince George's County were altered and materially changed, rendering them materially false by redacting the word "VOID" from these documents.

75.     Defendants brazenly employed these documents in the attempt to foreclose on her home, perpetrating a fraud on the Circuit Court and continuing its violation of the FDCPA in misrepresenting, mischaracterizing, and falsely describing the nature of Plaintiff's debt—in this case to a judicial tribunal.

76.     By attempting to foreclose on Plaintiff's home, Defendants attempted to exercise a legal right it did not possess.  By attempting to exercise a legal right it did not possess, Defendants took actions that could not be legally be taken, and as such, have violated the FDCPA.

**COUNT IV**
**VIOLATIONS OF THE MARYLAND CONSUMER DEBT COLLECTIONS ACT**
**Md. Code Ann., Com. Law §§ 14-201 to -204**

77.     Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

78.     Defendants regularly sent harassing notices to Plaintiff, threatening to foreclose on her home and ultimately filing an action in the Circuit Court of Maryland to foreclose on her home.

79.     Defendants made false, deceptive, and misleading representations to the Plaintiff.  It was false, deceptive, and misleading to falsely describe both 1) the amount of debt Plaintiff had in connection with mortgage and 2) the character of the debt because Defendants had absolutely no legal basis whatsoever to take any action with respect to collecting mortgage payments on the property and foreclosing on the property.

80.     Defendants had no legal basis to take these actions because there is no legally valid, cognizable deed of trust or promissory note in connection with Plaintiff's

home.  The promissory note and deed of trust are void.  Defendants made no effort to have Plaintiff execute a mortgage and deed of trust that reflected the fixed rate she initially agreed to and ownership of her home.

81.     By not having Plaintiff execute valid documents in connection with her mortgage, Defendants for years continuously misrepresented, mischaracterized, and falsely described the nature of Plaintiff's debt in egregious violation of the MCDCA.

82.     Defendants continued their violations by attempting to foreclose on Plaintiff's home in 2016, and using documents described by the Special Court of Appeals as forgeries in that attempt.

83.     Specifically, the Defendants by and through their principals or agents forged the promissory note and deed of trust by excising the word "VOID" from those documents in order to file them with Prince George's County to perfect title and/or used those forged documents to foreclose on Ms. Mitchell's home.

84.     The Special Court of Appeals found that the deed of trust and promissory note filed with Prince George's County were altered and materially changed, rendering them materially false by redacting the word "VOID" from these documents.

85.     Defendants brazenly employed these documents in the attempt to foreclose on her home, perpetrating a fraud on the Circuit Court and continuing its violation of the MCDCA in misrepresenting, mischaracterizing, and falsely describing the nature of Plaintiff's debt-in this case to a judicial tribunal.

86.     By attempting to foreclose on Plaintiff's home, Defendants attempted to exercise a legal right it did not possess.  By attempting to exercise a legal right it did not

possess, Defendants took actions that could not be legally be taken, and as such, have violated the MDCPA.

## COUNT V
## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law §§ 13-101 to -501d

87.    Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

88.    Violations of the MCDCA give rise to *per se* violations of the Maryland Consumer Protection Act ("MCPA").  Md. Code Ann., Com. Law § 13-301(14)(iii).

89.    Defendants regularly sent harassing notices to Plaintiff, threatening to foreclose on her home and ultimately filing an action in the Circuit Court of Maryland to foreclose on her home.

90.    Defendants made false, deceptive, and misleading representations to the Plaintiff.  It was false, deceptive, and misleading to falsely describe both 1) the amount of debt Plaintiff had in connection with mortgage and 2) the character of the debt because Defendants had absolutely no legal basis whatsoever to take any action with respect to collecting mortgage payments on the property and foreclosing on the property.

91.    Defendants had no legal basis to take these actions because there is no legally valid, cognizable deed of trust or promissory note in connection with Plaintiff's home.  The promissory note and deed of trust are void.  Defendants made no effort to have Plaintiff execute a mortgage and deed of trust that reflected the fixed rate she initially agreed to and ownership of her home.

92.     By not having Plaintiff execute valid documents in connection with her mortgage, Defendants for years continuously misrepresented, mischaracterized, and falsely described the nature of Plaintiff's debt in egregious violation of the MCDCA— and by that—*per se* violation of the MCPA, as well.

93.     Defendants continued their violations by attempting to foreclose on Plaintiff's home in 2016, and using documents described by the Special Court of Appeals as forgeries in that attempt.

94.     Specifically, the Defendants by and through their principals or agents forged the promissory note and deed of trust by excising the word "VOID" from those documents in order to file them with Prince George's County to perfect title and/or used those forged documents to foreclose on Ms. Mitchell's home.

95.     The Special Court of Appeals found that the deed of trust and promissory note filed with Prince George's County were altered and materially changed, rendering them materially false by redacting the word "VOID" from these documents.

96.     Defendants brazenly employed these documents in the attempt to foreclose on her home, perpetrating a fraud on the Circuit Court and continuing its violation of the MCDCA and MCPA in misrepresenting, mischaracterizing, and falsely describing the nature of Plaintiff's debt-in this case to a judicial tribunal.

97.     By attempting to foreclose on Plaintiff's home, Defendants attempted to exercise a legal right it did not possess.  By attempting to exercise a legal right it did not possess, Defendants took actions that could not be legally be taken, and as such, have violated the MCPA.

## COUNT VI
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681, *et seq.*

98.     Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

99.     Defendants, throughout the course of Plaintiff making payments under the mortgage, failed to accurately credit the balance owed and sent her harassing notices wholly inaccurate information about the monetary status of her mortgage.

100.     Defendants notified the Plaintiff of their intent to report to credit agencies that Plaintiff was in default of her loan, when in fact Defendants failed to accurately maintain/track Plaintiff's mortgage record.

101.     This failure caused Defendants to willfully and knowingly inaccurately report—in stark violation of the FCRA—the status of Plaintiff's payments on her mortgage.

102.     Defendants had and continue to have an obligation to furnish accurate information to credit reporting agencies.

103.     Plaintiff notified a consumer reporting agency of the inaccuracies in her credit report.

104.     The consumer reporting agency notified the furnisher of the information, Defendants, that Plaintiff disputed the accuracy of the information contained in the credit report.

105.     Defendant furnishers failed to adequately investigate and cure the matter after receiving notice from the credit reporting agency.

106.    Plaintiff has been irretrievably injured and has suffered great monetary harm and damage as a result of Defendants' knowingly false furnishing of information to credit reporting agencies.

### DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1.    Enter judgment for the Plaintiff on all counts of the Complaint award her compensatory damages;

2.    Enter an award of punitive damages due to the willfulness of Defendants' conduct;

3.    Award Plaintiff her costs and attorneys' fees;

4.    Award Plaintiff prejudgment interest; and

5.    Award Plaintiff any other such relief as this Court deems just and proper.


Dated: June 30, 2017                              **BRUNDIDGE & STANGER, P.C.**


By:    _s/David E. Moore/_
       David E. Moore  (Bar No. 19570)

       Carl I. Brundidge
            (*pro hac vice forthcoming*)

24

1925 Ballenger Avenue, Suite 560
Alexandria, VA  22314
703-684-1470 (Office)
703-684-1470 (Fax)
david.moore@brundidge-stanger.com
cbrundidge@brundidge-stanger.com

–and–

**SPIRO HARRISON**

Jason C. Spiro
        (*pro hac vice forthcoming*)
Jeffrey A. Shooman
        (*pro hac vice forthcoming*)
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
973-232-0881 (Office)
973-232-0887 (Fax)
jspiro@spiroharrison.com
jshooman@spiroharrison.com