IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RENE MITCHELL,                       *

    Plaintiff,                    *

  v.                                 *   Civil Action No. PX-17-1805

U.S. BANK NATIONAL ASSOCIATION,      *
*et al.*,
                                   *

    Defendants.                   *
******

**MEMORANDUM OPINION**

Pending before the Court in this consumer protection action are two motions to dismiss, the first filed by Defendants Ocwen Loan Servicing, LLC ("Ocwen"), and U.S. Bank National Association ("U.S. Bank") (ECF No. 14),[1] and the second filed by Defendant Brock & Scott, PLLC. ECF No. 21. The matter has been fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' arguments, the Court GRANTS Defendants' motions.

**I.    Background**

This case relates to Plaintiff Rene Mitchell's purchase of real property at 9003 Harness Way, Bowie, MD (the "Property") and the mortgage she secured in connection with that purchase. *See* ECF No. 9 ¶¶ 15, 27. On June 8, 2005, Mitchell signed a conventional fixed rate 30-year mortgage loan sales contract to purchase the Property, with Fremont Investment and Loan ("Fremont") as the lender. ECF No. 9 ¶ 28. Fremont is not a party to this suit.

---

[1] Plaintiff names two separate U.S. Bank National Association entities in her Complaint. For the purposes of this opinion, the Court treats the motion to dismiss as filed on behalf of both U.S. Bank National Association entities. *See* ECF No. 14 at 1 n.1.

1

The parties went to closing on June 11, 2005. Soon into the document signing process typical of closings, Mitchell realized that the promissory note she had signed was for an adjustable rate mortgage, not a fixed rate mortgage. Before closing, Mitchell had understood that her mortgage would be a fixed interest rate, as reflected in the contract of sale and her conversations with Fremont and Paula Haines, a realtor who assisted with the closing. ECF No. 9 ¶¶ 28, 29. When Mitchell realized the mistake, she informed a number of individuals at the closing of the error, and refused to sign additional documents.

Mitchell also requested that the documents she had already signed be returned to her and not used until the documents reflected the corrected mortgage terms. ECF No. 9 ¶ 30. Barbara Licon, the settlement agent, agreed to terminate the closing, but believed she had to retain the already signed documents and later shred them. ECF No. 9 ¶ 31. At Mitchell's request, the signed documents, including the promissory note, deed of trust, and other documents, were marked "VOID." ECF No.9 ¶ 32. Mitchell, Licon, and notary public Philip Sardelis initialed next to each VOID mark, and copies of the marked documents were provided to Mitchell. ECF No. 9 ¶ 32. Mitchell also informed the lender, Fremont, of the error, and Fremont acknowledged that the promissory note and deed of trust should have been based on a conventional fixed rate 30-year loan. ECF No. 9 ¶ 33. The next day, the adjustable rate loan was cancelled. ECF No. 9 ¶ 34.

A deed of trust to the Property was recorded in the land records for Prince George's County on July 14, 2005, however, this deed reflected the adjustable rate mortgage and was not marked "VOID". ECF No. 9 ¶ 52. On July 15, 2005, Fremont noted on copies of each of the voided documents that the loan had been cancelled and satisfied in full and provided copies to Mitchell. ECF No. 9 ¶ 34. Mitchell thereafter repeatedly attempted to obtain corrected

documents to reflect a conventional fixed rate 30-year loan, but despite best efforts, never did secure executed copies of the fixed rate mortgage loan documents. ECF No. 9 ¶ 35.

Mitchell thereafter continued to make payments on her mortgage without incident until January 2013 when she defaulted on the loan. At some point prior to Mitchell's default, Fremont had transferred the mortgage and deed of trust to U.S. Bank. ECF No. 9 ¶ 36. In 2010, Ocwen became the trustee holding the mortgage and deed of trust and replaced non-party HomeQ as the mortgage servicer. ECF No. 9 ¶ 39. Brock & Scott became the substitute trustee for U.S. Bank by no later than October 9, 2014. *See* ECF No. 9 ¶ 44.

During this time, Mitchell corresponded in writing with Ocwen, U.S. Bank, and U.S. Bank in its capacity as trustee, regarding concerns about her loan, to include sending Qualified Written Requests ("QWRs"). [2] ECF No. 9 ¶ 40. For example, in October 2011, Mitchell challenged Ocwen's establishment of an unauthorized escrow account. Mitchell sent a QWR to Ocwen in July 2012 and another in November 2013, but does not specify the contents of her requests. ECF No. 9 ¶ 40. Mitchell sent another QWR in November 2014, to Ocwen, U.S. Bank, and its attorneys (apparently Brock & Scott), about "accounting and servicing issues," and raising general concerns about Fremont's predatory lending practices. ECF No. 9 ¶ 45.

Defendants did not adequately respond to the third QWR. ECF No. 9 ¶ 45. Instead, Ocwen sent Mitchell "harassing notices" regarding her loan default and threatened her with foreclosure. ECF No. 9 ¶ 43. At an unspecified date, Mitchell alerted the Consumer Financial Protection Bureau ("CFPB") to Ocwen's practices. ECF No. 9 ¶40. In December 2013, Mitchell received a letter from the CFPB which provided a link to Ocwen's response. Ocwen conveyed

---

[2] "The purpose of a QWR, also called a Notice of Error or Request for Information, is to dispute an error relating to, or request information about, the servicing of a mortgage loan." *Birmingham v. PNC Bank, N.A.*, No. PX-16-198, 2016 WL 3855686, at *2 (D. Md. July 15, 2016).

that it was gathering documents to be forwarded to the CFPB within 30 days. ECF No. 9 ¶ 42. Ocwen never sent the documents. ECF No. 9 ¶42.

On March 12, 2015, Mitchell learned by letter that Ocwen had referred her mortgage for foreclosure initiation, and demanded from Mitchell payment of $475,000 in full satisfaction of the adjustable rate mortgage. ECF No. 9 ¶ 46. Mitchell responded just days later (March 22, 2015) that the adjustable rate loan had been cancelled in 2005 and disputed the calculation of the amount owed. ECF No. 9 ¶ 47.

On August 25, 2015, Defendants initiated foreclosure proceedings in state court. ECF No. 9 ¶ 48. On September 24, 2015, Mitchell moved to dismiss the state foreclosure action, arguing in relevant part that the promissory note and deed of trust were null and void, and effectively procured by fraud. ECF No. 9 ¶ 53; *see Mitchell v. Yacko*, 232 Md. App. 624, 633 (2017). The Circuit Court denied Mitchell's motion without a hearing and Mitchell appealed. ECF No. 9 ¶ 54.

The Maryland Court of Special Appeals reversed the Circuit Court's determination and remanded for an evidentiary hearing on whether the mortgage was based on forged documents. The Court of Special Appeals reasoned that the documents recorded in the land records without a "VOID" mark "suggest forgery." *Mitchell*, 232 Md. App. at 627. Accordingly, because "a foreclosure proceeding cannot be instituted upon forged documents," the Court of Special Appeals directed the Circuit Court to determine whether the documents at issue were fraudulent. *Id.* at 643.

While the state action was on remand, Mitchell filed suit in this Court on June 30, 2017, ECF No. 1, and thereafter amended her complaint on August 7, 2017. ECF No. 9. The entirety of her claims rest on the theory that her loan documents in 2005 were forged, and thus all

4

Defendants' actions taken to collect on the loan support claims for negligence (Count I); fraud (Count II); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (Count III); violations of the Maryland Consumer Debt Collections Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 to -204 (Count IV); violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 to -501d (Count V); and violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (Count VI).

In Count I, negligence, Mitchell alleges that Defendants violated the duty of care owed to her by "egregiously forging and falsifying legal documents and/or using such forged and false documents"; "failing to properly and accurately credit payments" made toward her loan; harassing Mitchell and demanding payment based on "false and inflated accountings"; and attempting to foreclose on Mitchell's home. ECF No. 9 ¶ 60. In Count II, Mitchell alleges that Defendants committed fraud by "egregiously forging and falsifying legal documents and/or using such forged and false documents"; "harassing and demanding payment for years based on false and inflated accountings"; and attempting to foreclose on the Property based on forged documents. ECF No. 9 ¶ 64.

As to Counts III, IV, and V, the FDCPA, MCDPA and MCPA counts, Mitchell asserts that Defendants sent harassing notices, and initiated judicial foreclosure proceedings without legal right to do so. ECF No. 9 ¶¶ 72-91. In Count VI, her FCRA claim, Mitchell alleges that Defendants failed to credit accurately the balance owed on her mortgage "throughout the course of [Mitchell] making payments under the loan," ECF No. 9 ¶ 102, which caused Defendants to "willfully and knowingly inaccurately report . . . the status of [Mitchell's] payments on the loan." ECF No. 9 ¶ 104. Mitchell further avers that even after receiving notice that Mitchell disputed the debt on her credit report, Defendants did nothing to cure the errors. ECF No. 9 ¶ 107-08.

5

Defendants moved to dismiss the Amended Complaint, arguing that the Court should abstain from ruling on this case under *Colorado River Water Conservation District v. United States*, in light of the ongoing state court foreclosure proceedings. *See Colorado River Water Conservation Dist. v. U.S*, 424 U.S. 800, 818 (1976). Alternatively, Defendants contend that dismissal is warranted because all claims are time-barred by the applicable statutes of limitations and because Mitchell has failed to state a claim upon which relief can be granted. The Court agrees that Mitchell's claims must be dismissed as a matter of law, and thus need not reach the question of abstention.

**II.  Standard of Review**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint includes facts sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A plaintiff must plead facts to support each element of the claim to satisfy the standard. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). In so assessing, the Court takes as true all well-pleaded factual allegations and makes all reasonable inferences in the plaintiff's favor. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court does not credit conclusory statements or legal conclusions, even when couched as allegations of fact. *See Iqbal*, 556 U.S. 678–79; *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

**III.  Analysis**

Defendants argue that all of Mitchell's claims are barred by the applicable statues of limitations. Although limitations is usually raised as an affirmative defense, where, as here, the bar to suit "is apparent on the face of the complaint," then the complaint does not "state a claim

*upon which relief can be granted*," and can be disposed of at the motion to dismiss stage. *G & H Clearing and Landscaping v. Whitworth*, 66 Md. App. 348, 354 (1986) (emphasis in original). See also *Brooks v. City of Winston–Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996) (citing *Richmond F. & P. R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) ("dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."); 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate). The Court considers each cause of action separately below.

### A. Negligence (Count I)

Mitchell's claim for negligence is governed by a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see also Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011). Pursuant to the discovery rule, a cause of action accrues when a plaintiff knew or reasonably should have known of the defendant's acts or omissions giving rise to the claims. *Poffenberger v. Risser*, 290 Md. 631, 636 (1981). "[N]otice of facts which would incite a person of reasonable prudence to inquire is notice of all facts which reasonably diligent inquiry would develop." *In re Klein Moffett Co.*, 28 F.2d 523, 525 (D. Md. 1928); *see Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 90 (2006). "[T]he law imputes knowledge when opportunity and interest, coupled with reasonable care, would necessarily impart it." *Nettles v. Childs*, 100 F.2d 952, 957 (4th Cir. 1939).

The Amended Complaint makes plain that Mitchell was on inquiry notice in 2005 about Defendants' conduct giving rise to her negligence claims, thus triggering the accrual of limitations. Mitchell knew from her closing that erroneous documents were executed. Indeed,

7

Mitchell asserts that she repeatedly urged the lender to execute corrected documents. ECF No. 9 ¶ 35. Three days after closing, a supposed fraudulent deed of trust (without a "VOID" stamp) was filed in the land records for Prince George's County. ECF No. 9 ¶ 52. This alone would cause a reasonable person to inquire about the status of her loan. *Storey v. Columbia Home Loans, LLC*, No. RDB-11-03214, 2012 WL 1957978, at *7 (D. Md. May 23, 2012) (finding that the recording of a deed would "cause a reasonable person to inquire about potential problems regarding a loan and its terms"); *Branch v. Bank of Am., N.A.*, No. PWG-11-3712, 2013 WL 6815903, at *3 (D. Md. Dec. 19, 2013) (interpreting *Storey* narrowly to find that "even in the context of mortgage irregularities, a party is not necessarily on notice of fraud *until* a fraudulent deed actually has been recorded.") (emphasis added). Thus, Mitchell should have filed her claims within three years after such recordation. She did not. Claims stemming from the 2005 loan are barred by limitations.

Mitchell contends, however, that the "continuing harm" exception of the discovery rule tolls limitations in her case. Mitchell's reading of the continuing harm exception sweeps too broadly. Where the defendant "committed a series of acts or established an unlawful course of conduct, i.e., 'continuing violations,' and at least one tortious act took place within the limitations period, the 'continuing harm' exception to the discovery rule applies." *Mercantile Place #1 Ltd. P'ship v. Renal Treatment Centers-Mid Atl., Inc.*, No. PX 17-1266, 2017 WL 5171120, at *5 (D. Md. Nov. 8, 2017) (citations omitted). Under the continuing harm exception, "violations that are continuing in nature are not barred by the statute of limitations merely because one or more of them occurred earlier in time." *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 646 (2013) (quoting *MacBride v. Pishvaian*, 402 Md. 572, 583 (2007)). That said, recovery

for continuing violations is limited to the damages incurred for the three years prior to filing suit. *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 820 (D. Md. 2015).

The continuing harm theory does not save the lion's share of Mitchell's negligence claim. Mitchell has not alleged one act or series of related acts that caused continuing harm. Rather, Mitchell alleges a series of discrete acts which involve Defendants proceeding as if Mitchell obtained an adjustable rate rather than a fixed rate mortgage. These acts, as specifically pleaded in the Amended Complaint are:

- egregiously forging and falsifying legal documents and/or using such forged and false documents;
- failing to properly and accurately credit payments made by Plaintiff toward the loan;
- harassing and demanding payment for years based on false and inflated accountings;
- attempting to foreclose on Plaintiff's home based on forged documents without any legal basis to do so.

ECF No. 9 ¶60. Each act undertaken in a common transactional relationship does not alone constitute a continuing course of harmful conduct. Put differently, assuming that the above acts could somehow satisfy a negligence claim, Plaintiff was free to bring her suit for the initial forgery as soon as those acts were consummated.[3] Similarly, Mitchell could have sued Defendants when, in 2011, Defendants began "harassing" her for monies she claims not to have owed. ECF No. 9 ¶¶40, 43. But she did not. That Defendants then engaged in other alleged wrongdoing arising from their attempts to collect on the loan does not automatically render limitations tolled. Accordingly, all alleged acts falling outside the three-year window prior to the filing of this suit are barred.

---

[3] Notably, Mitchell could not bring such a claim against the current Defendants, as none were party to the original 2005 loan process.

The remaining factual allegations that occurred within the three-year limitations period concern the attempted foreclosure on the Property. ECF No. 9 ¶60. As to these factual allegations, Plaintiff's negligence claim fails as a matter of law. Mitchell attempts to repackage the foreclosure action as a negligence claim. However, the economic loss doctrine bars recovery where, as here, a contractual relationship gives rise to monetary damage. *Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 900 (D. Md. 2015). "The economic loss doctrine represents a judicial refusal to extend tort liability to negligence that causes purely economic harm in the absence of privity, physical injury, or risk of physical injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611 (2017). Mitchell has pleaded no facts which constitute an exception to the economic loss doctrine and so her negligence claim must be dismissed.

### B. Fraud (Count II)

Likewise, Mitchell plainly fails to state a claim for fraud. Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a complaint "must state with particularity the circumstances constituting fraud[.]" Fed R. Civ. P. 9 (b). Accordingly, Mitchell, "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). Rule 9(b) ensures that the defendant is afforded sufficient notice of the plaintiff's claim and protected against frivolous suits. *Harrison*

*v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citation omitted). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal. *Id.* at 783 n.5.

To state a claim for fraud under Maryland law, a plaintiff must plausibly aver that: (1) the defendant made a false statement; (2) the defendant was aware that the statement was false; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff not only relied upon the misrepresentation, but had the right to do so, and would not have taken that action if the false statement had not been made; and (5) as a direct result of the misrepresentation, the plaintiff suffered damages. *See James v. Weisheit*, 279 Md. 41, 44 (1977); *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400 (D. Md. 2018).

As with Plaintiff's negligence claim, fraud is subject to a three year statute of limitations. *Branch v. Bank of Am., N.A.*, No. PWG-11-3712, 2013 WL 6815903, at *2 (D. Md. Dec. 19, 2013). The allegations in the Amended Complaint falling within the limitations period concern Defendants' foreclosure proceedings. The Amended Complaint does not include *any* specific false statement or omission by any particular Defendant. Rather, Mitchell merely avers as to *all* Defendants a generalized course of conduct spanning several years and stemming from her fundamental theory that the original loan terms in 2005 were procured by fraud. This claim is simply insufficient to satisfy the heightened pleading standard of Rule 9(b).

Similarly, Mitchell fails to aver facts demonstrating how she detrimentally relied on any such fraud. Mitchell simply alleges that had she known "the true facts," she "would not have maintained the Defendants as her lender, servicer, and trustee," or would have taken legal action. ECF No. 9 ¶68. But according to Mitchell, she knew the "true facts," regarding the errors that plagued her loans, from the beginning. Accordingly, her assertions that she would have taken nonspecific "legal action" or "changed lenders," especially without averring particular

11

statements or omissions as false, are not sufficient to demonstrate detrimental reliance. Plaintiff's fraud claim must be dismissed.

### C.  FDCPA (Count III)

The statute of limitations for violation of the FDCPA is limited to one year, measured "from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *McGhee v. JP Morgan Chase Bank, N.A.*, No. DKC 12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013) (quoting *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012)). The only conceivable course of conduct falling within this one-year time period is, again, the initiation of foreclosure proceedings. The foreclosure proceedings began on August 25, 2015, ECF No. 9. ¶ 45. Mitchell had until August 25, 2016 to file this claim, but waited well beyond that time to bring this case. Accordingly, the claim is time-barred.

### D.  MCDCA and MCPA (Counts IV and V)

Mitchell's MCDCA and MCPA claims are subject to a three-year statute of limitations. *Ayres v. Ocwen Loan Servicing*, LLC, 129 F. Supp. 3d 249, 272 (D. Md. 2015); *Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.*, 358 Md. 453, 482 (2000). For purposes of the limitations analysis, "each misrepresentation by a defendant is a new violation of the MCPA and MCDCA." *Ayres*, 129 F. Supp. 3d at 272. A cause of action under these statutes accrues "when the claimant in fact knew or reasonably should have known of the wrong." *Id.* (quoting *Walton v. Wells Fargo Bank, N.A.*, No. AW13–428, 2013 WL 3177888, at *6 (D. Md. June 21, 2013)).

The MCDCA prohibits a wide array of deceptive practices, only two of which are pertinent to Mitchell's action. In particular, section 14-202(6) prohibits a debt collector from "[c]ommunicating with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor." Md.

12

Code Ann., Com. Law § 14–202(6). Section 14-202(8) prohibits a collector from attempting or threatening to "enforce a right with knowledge that the right does not exist." *Id.* at § 14-202(8). As to § 14-202(8), Plaintiff must demonstrate that Defendants acted with actual knowledge or "with reckless disregard as to the validity of the claims." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 128 (4th Cir. 2014) (quoting *Spencer v. Hendersen–Webb, Inc.*, 81 F.Supp.2d 582, 595 (D. Md. 1999)).

Under either MCDCA subsection, Mitchell's claim fails as a matter of law. The Amended Complaint does little more than allege in a conclusory fashion that Defendants regularly sent "harassing notices" and "made false, deceptive, and misleading representations" regarding the amount owed on the loan. ECF No. 9 ¶¶81-83. Mitchell gives no further details on how such communications were, in fact, harassing. Because legal conclusions couched as factual assertions are insufficient to withstand challenge, *Giarratano*, 521 F.3d at 302, the MCDCA claim under 14-202(6) must be dismissed.

As for the second theory of liability, Mitchell has averred no facts to support the inference that Defendants actually knew or acted with reckless disregard that their right to collect on the mortgage "did not exist." Md. Code Ann., Com. Law § 14-202(8). The Amended Complaint avers that the documents which rendered the loan uncollectable had been recorded in 2005, when non-party Freemont was the lender and non-party HomeQ was the servicer. The Amended Complaint further avers that U.S. Bank eventually assumed the loan, Brock & Scott became the substitute trustee, and Ocwen became the loan servicer. ECF No. 9 ¶¶36, 39, 44. No facts, however, support the inference that Ocwen, Brock & Scott, or U.S. Bank *knew* the underlying loan was invalid or acted with reckless disregard. Defendants' subsequent attempts to collect on the loan, without more, does not give rise to the inference that Ocwen, Brock &

13

Scott, or U.S. Bank did so knowing (or recklessly disregarding) that the loan documents were fraudulent. *Bolden v. McCabe, Weisberg & Conway, LLC*, No. DKC 13-1265, 2013 WL 6909156, at *6 (D. Md. 2013) ("[T]o succeed on a MCDCA claim, the express language of the MCDCA requires that Plaintiff allege that Defendant acted with *knowledg*e as to the invalidity of the debt.") (emphasis in original). This is especially so when considering that the MCDCA "is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." *Fontell,* 870 F. Supp. 2d at 405 (emphasis in original); *see also Awah v. CAPITAL ONE BANK, N.A.*, No. CV DKC 14-1288, 2016 WL 930975, at *5 (D. Md. Mar. 11, 2016), *dismissed sub nom. Awah v. Capital One Bank*, 668 F. App'x 463 (4th Cir. 2016) ("Plaintiff . . . cannot challenge the validity of the underlying debt under the MCDCA."). Accordingly, Plaintiff's MCDCA claim fails as a matter of law.

Turning to the MCPA claim, to the extent that Mitchell proceeds on the theory that a MCDCA violation is also *per se* violation of the MCPA, Md. Code Ann., Com. Law § 13-301(14)(iii), the MCPA claim fails for the same reasons. Alternatively, to the extent that Mitchell brings a stand-alone MCPA claim, the claim is subject to the same heightened pleading as those sounding in fraud. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Plaintiff, therefore, must aver plausibly that defendant engaged in (1) an unfair or deceptive trade practice or misrepresentation that is (2) relied upon and (3) causes actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007), *aff'd sub nom Lembach v. Bierman*, 528 Fed.App'x. 297 (4th Cir. 2013)).

Mitchell alleges identical facts as for her MCDCA claim, averring that Defendants violated the MCPA by making "false, deceptive, and misleading representations" of the amount

and nature of the debt owed. ECF No. 9 ¶93. Mitchell asserts that Defendants "brazenly" used invalid documents to initiate foreclosure proceedings, "attempting to exercise a legal right [they] did not possess." ECF No. 9 ¶96, 100. As above, however, Mitchell's claim is short one link. The Amended Complaint does not permit a plausible inference that Defendants, the assignees of the loan, actually knew of the debt's purported invalidity. Absent facts demonstrating such knowledge, liability to the successor lender cannot be imputed under the MCPA. *Brown v. Bank of Am., N.A.*, No. AW-10-CV-1661, 2012 WL 380145, at *5 (D. Md. Feb. 3, 2012) (refusing to impute liability for forged loan documents to successor lender). This is because "an assignee who t[akes] an instrument 'subject to . . . claims and defenses' [is] not subject to affirmative claims for relief based on the assignor's misconduct, but the assignee instead face[s] only the risk that his own claim could be reduced or eliminated because of the misconduct of the assignor." *Fulmore v. Premier Fin. Corp.*, No. JFM-09-2028, 2010 WL 4286362, at *4 (D. Md. Oct. 29, 2010), *aff'd sub nom. McLeod v. PB Inv. Corp.*, 492 F. App'x 379 (4th Cir. 2012); *see also Holliday v. Holliday*, No. 8:09- 01449-AW, 2011 WL 3565566, at *3 (D. Md. Aug. 11, 2011), *aff'd*, 522 F. App'x 174 (4th Cir. 2013), and *aff'd*, 522 F. App'x 174 (4th Cir. 2013). Mitchell's MCPA claim rests exclusively on assignee liability which is prohibited as a matter of law. Thus, this claim must be dismissed.[4]

## IV. FCRA (Count VI)

Mitchell's FCRA claim is subject to either a two-year limitations period after "the date of discovery by the plaintiff of the violation that is the basis for such liability" or five years after the violation itself occurs, whichever is earlier. 15 U.S.C. § 1681p. Mitchell does not specify which

---

[4] Assignee liability is unavailable for common law fraud claims, and thus provides an alternative ground to dismiss Count II. *See, e.g., Bezmenova v. Ocwen Fin. Corp.*, No. 8:13-00003-AW, 2013 WL 3863948, at *6 (D. Md. July 23, 2013). The Court notes, however, that even though Mitchell cannot invoke assignee liability as a theory of recovery in this case, she may defend her foreclosure action on this basis. *Holliday,* 2011 WL 3565566, at *3.

of the § 1681 subsections Defendants allegedly violated, nor does she allege when these supposed violations occurred. Rather, Mitchell baldly asserts that she "notified a credit reporting agency" of the disputed inaccuracies and that Defendants failed to investigate or "cure the matter." ECF No.9 ¶¶ 101-107. Indeed, the only fact possibly related to this claim is her 2013 report to the Consumer Federal Protection Bureau ("CFPB"), which prompted the CFPB to respond in December 2013. ECF No. 9 ¶¶40, 44 106. Even assuming this exchange with the CFPB could somehow support a FCRA claim, the claim at best accrued at the end of 2013. Accordingly, because Mitchell did not file this claim within the two-year limitations window (by December 2015), the claim is also time-barred.

Alternatively, even if the claim was not time-barred, Mitchell fails to aver plausibly an FCRA violation. The Amended Complaint does not identify a violation of any specific FCRA subsection, and the single provision on which she relies in her opposition -- 15 U.S.C. § 1681s-2(a)(2) -- does not allow for a private cause of action. *Ausar-El v. Barclay Bank Delaware*, No. PJM 12-0082, 2012 WL 3137151, at *2 (D. Md. July 31, 2012); *Willard v. Kunda*, No. JFM-10-326, 2010 WL 4365569, at *1 n.1 (D. Md. Nov. 3, 2010), *aff'd*, 432 F. App'x 259 (4th Cir. 2011); *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585, 589 (4th Cir. 2003). The Court, therefore, cannot discern the basis for the FCRA claim, and so it must be dismissed.[5]

---

[5] Because Plaintiff's claims are dismissed, the Court need not reach *Colorado River* abstention.

## V. Conclusion

For the reasons expressed above, the Court GRANTS Defendants' motions to dismiss. A separate Order follows.

| | |
|---|---|
| September 28, 2018 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |